**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| BOBBY O'DANIEL, | No. 07-354-PCT-MHM |
| Plaintiff, | **ORDER** |
| vs. | |
| OFFICE OF NAVAJO AND HOPI INDIAN RELOCATION, an administrative agency of the United States, | |
| Defendant. | |

Currently pending before the Court are Plaintiff Bobby O'Daniel's ("Plaintiff") motion for summary judgment (Dkt. #23) and Defendant Office of Navajo and Hopi Indian Relocation's ("ONHIR") cross-motion for summary judgment (Dkt. #27). After reviewing and considering the pleadings, the Court issues the following order.

**I.  PROCEDURAL HISTORY**

Plaintiff , a member of the Navajo Nation, applied for relocation assistance benefits on May 22, 1995, under the Navajo-Hopi Settlement Act, 25 U.S.C. § 640d. Congress created ONHIR to carry out the relocation of members of the Navajo and Hopi Indian Tribes who resided on land that had been partitioned to the other Tribe under the Settlement Act. See 25 U.S.C. §§ 640d-11-640d-15. The scope of ONHIR's authority includes the disbursement of relocation assistance benefits equivalent to the "reasonable

1    cost of a decent, safe, and sanitary replacement dwelling to accommodate [a displaced]
2    household." 25 U.S.C. § 640d-14(b)(2).

3         Plaintiff applied to ONHIR for relocation assistance benefits on April 2, 1998;
4    Plaintiff's application was considered under ONHIR's "late applicant" regulations, 25
5    C.F.R. § 700.138 *et seq.* (Dkt. #23-2, Plaintiff's Statement of Facts ("PSOF") ¶ 3). On
6    September 28, 1998, ONHIR denied Plaintiff's request for benefits after finding that
7    Plaintiff (1) was not a head of household as of July 7, 1986, pursuant to 25 C.F.R. §
8    700.69 and 25 C.F.R. § 700.137(b), and (2) did not meet the eligibility criteria of 25
9    C.F.R. § 700.138, in that Plaintiff did not physically reside full-time on the Big Mountain
10   Hopi Partitioned Land ("HPL") since July 7, 1986. (PSOF ¶ 4). Plaintiff appealed the
11   decision on October 2, 1998; an explanatory conference was held on March 26, 1999; on
12   March 30, 1999, ONHIR reaffirmed its denial of Plaintiff's eligibility for relocation
13   assistance benefits. (PSOF ¶¶ 5-6).

14        An Administrative Hearing was held on July 21, 1999 before Hearing Officer
15   Harold Merkow, during which Plaintiff, his mother, Leta O'Daniel, and his uncle,
16   Thomas Bedonie, testified on Plaintiff's behalf. (PSOF ¶ 7). The Hearing Officer
17   affirmed ONHIR's denial of Plaintiff's application for relocation assistance benefits on
18   September 29, 1999, finding that (1) Plaintiff was a legal resident of the Big Mountain
19   Hopi Partitioned Land ("HPL") on December 22, 1974, as a dependent minor; (2)
20   Plaintiff was a legal resident of the Big Mountain HPL on July 7, 1986, as he maintained
21   recurring contacts with the area despite having moved to Atwater, California; (3) Plaintiff
22   was not a full-time resident of the Big Mountain HPL as of July 7, 1986, and until his
23   contact with ONHIR on May 22, 1995, because he had alternative residences in
24   California, Arizona, and New Mexico. (PSOF ¶ 8). The Hearing Officer also made
25   findings concerning Plaintiff's head of household status, finding that Plaintiff was not a
26   credible witness regarding certain earnings, and ultimately concluding that Plaintiff was
27   not a head of household as of July 7, 1986. (Dkt. #26, Defendant's Statement of Facts
28   ("DSOF") ¶ 7). ONHIR subsequently issued a Notice of Final Agency Action on

1 February 13, 2001, adopting and affirming the Hearing Officer's September 29, 1999
2 decision. (PSOF ¶ 10).

3 On February 13, 2007, Plaintiff filed the instant complaint against ONHIR,
4 asserting that ONHIR's decision to deny him relocation assistance benefits violated the
5 Administrative Procedure Act ("APA"), 5 U.S.C. § 500 *et seq.*, because the decision was
6 not supported by substantial evidence, was not in accordance with applicable law, and
7 was arbitrary, capricious, and an abuse of discretion. (Dkt. #1, Complaint ("Compl.") ¶¶
8 15-18). Specifically, Plaintiff contends that ONHIR's findings that Plaintiff was not a
9 head of household by July 7, 1986, and that Plaintiff did not reside full-time on the Big
10 Mountain HPL since then, was arbitrary and capricious. Plaintiff filed his instant motion
11 for summary judgment on September 28, 2007. (Dkt. #23). In response, ONHIR filed its
12 instant cross-motion for summary judgment on December 21, 2007. (Dkt. #27).

13 **II.    FACTUAL BACKGROUND**

14 Plaintiff was born to Leta and Bobby Ray O'Daniel in Phoenix, Arizona on
15 September 11, 1969. (PSOF ¶ 11). Plaintiff is a member of the Navajo Nation; he and
16 his family reside(d) on the Big Mountain HPL. (PSOF ¶ 1). On January 12, 1979,
17 Plaintiff's mother sustained severe injuries from an automobile accident and was admitted
18 to Stanford University Medical School for treatment in 1981; she was unable to stand
19 again until 1986. (PSOF ¶ 12). Between 1979 and 1982, Plaintiff "began going back and
20 forth between Tuba City, Arizona and Merced and Atwater, California." (PSOF ¶ 13).
21 Plaintiff attended all grades of high school in Atwater, California; he graduated on June
22 11, 1987. (DSOF ¶¶ 16-17). Although Atwater is 700 miles from the Big Mountain
23 HPL, Plaintiff returned to the HPL on long weekends, holidays, and vacations, including
24 summer vacations from 1984 to 1987. (PSOF ¶¶ 14, 18). Atwater is 700 miles from the
25 Big Mountain HPL. (PSOF ¶ 18).

26 From March to May of 1985, Plaintiff worked for the Atwater City Parks
27 Department; he worked two and one-half to four hours per days, five days a week, at the
28 minimum wage. (PSOF ¶ 15). Plaintiff contends that from November 1985 through

- 3 -

1  April 1986, he hauled water on a weekly basis, firewood on a bi-weekly basis, and coal
2  on a monthly basis, for his grandmother, Mary Bedonie, who lived on the Big Mountain
3  HPL; he also cared for livestock and helped with planting and harvesting.  (PSOF ¶ 16;
4  DSOF ¶ 18).  Although Plaintiff testified that his grandmother received social security
5  benefits, Plaintiff contends that his grandmother paid him $125.00 per month in cash for
6  this labor.  (DSOF ¶¶ 18, 22).  From March to May of 1986, Plaintiff worked for the
7  County of Merced, California at the Central Kitchen in Atwater, earning $810.70.  (PSOF
8  ¶ 15; DSOF ¶ 10).  Plaintiff returned to the Big Mountain HPL after he graduated from
9  the Atwater High School.  (PSOF ¶¶ 19, 21).

10  Plaintiff remained at the Big Mountain HPL until October 13, 1987, when he
11  entered the United States Marine Corps.  (PSOF ¶ 21).  Plaintiff listed his home of record
12  at the time of entry into the military as "3358 Virginia Street, Atwater, California 95301."
13  (DSOF ¶ 15).  Plaintiff was discharged from the Marine Corps on October 12, 1992, at
14  which time he returned to the Big Mountain HPL.  (PSOF ¶ 25).   Plaintiff lived on the
15  HPL until September 1993, at which time Plaintiff began to work for Ramsey
16  Construction in Flagstaff and Chambers, Arizona.  (PSOF ¶¶ 25, 27).  Then, between
17  March and December 1994, Plaintiff worked for Drewco Enterprises in Winslow,
18  Arizona; he rented an apartment in Winslow but returned to the Big Mountain HPL two
19  days a week.  (PSOF ¶ 28).  In January 1995, Plaintiff began working for the Santa Fe
20  Railroad; he was stationed in Winslow and Phoenix, Arizona; Gallup and Belen, New
21  Mexico; and Needles, California.  (PSOF ¶ 28; DSOF ¶ 24).  Plaintiff returned to the Big
22  Mountain HPL on long weekends, holidays, and vacations; his mother remained on the
23  HPL.  (PSOF ¶¶ 26, 28).  In addition, Plaintiff's uncle, Thomas Bedonie, worked for the
24  railroad in the mid-1980s and was absent from the HPL for long periods of time; he
25  relocated to Sanders, Arizona in 1988.  (DSOF ¶27).

### III.  STANDARD OF REVIEW

Under the Administrative Procedure Act ("APA"), 5 U.S.C. §500 *et seq.*, an aggrieved party may sue to set aside a final non-discretionary agency action that is

- 4 -

1  arbitrary or capricious, an abuse of discretion, or otherwise not in accordance with the
2  law.  See 5 U.S.C. § 702, 706(2)(A), (2)(E); Bark v. U.S. Forest Service, 2007 WL
3  756746 (D.Or. 2007) ("Under the APA, the court reviews the challenged agency action
4  under a narrow and deferential standard to determine whether such action was arbitrary
5  and capricious.") (citing 5 U.S.C. § 706(2)(A)); Bedoni v. Navajo-Hopi Indian Relocation
6  Com'n, 878 F.2d 1119, 1122 (9th Cir. 1989) ("In reviewing agency action, the reviewing
7  court can reverse only if the agency action was arbitrary, capricious, an abuse of
8  discretion, not in accordance with law, or unsupported by substantial evidence.").  Where
9  a court conducts judicial review pursuant to the APA, "summary judgment is an
10 appropriate mechanism for deciding the legal question of whether the agency could
11 reasonably have found the facts as it did." Occidental Engineering Co. v. Immigration
12 and Naturalization Service, 753 F.2d 766, 770 (9th Cir. 1985).

13         An agency action is arbitrary and capricious "if the agency has relied on factors
14 which Congress has not intended it to consider, entirely failed to consider an important
15 aspect of the problem, offered an explanation for its decision that runs counter to the
16 evidence before the agency, or is so implausible that it could not be ascribed to a
17 difference in view or the product of agency expertise." Motor Vehicle Mfrs. Ass'n of
18 U.S. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983); see Information
19 Providers' Coalition for Defense of the First Amendment v. FCC, 928 F.2d 866, 870 (9th
20 Cir. 1991) ("substantial evidence" means "such evidence as a reasonable mind might
21 accept as adequate to support a conclusion").  "The arbitrary and capricious standard is
22 'highly deferential, presuming the agency action to be valid and [requires] affirming the
23 agency action if a reasonable basis exists for its decision.'" Kern County Farm Bureau v.
24 Allen, 450 F.3d 1072, 1076 (9th Cir. 2006) (quoting Indep. Acceptance Co. v. California,
25 204 F.3d 1247, 1251 (9th Cir. 2000)).  Review under this standard is "exacting, yet
26 limited"; a court "may not substitute [its] judgment for that of the agency." Id.

27         Nevertheless, "the agency must examine the relevant data and articulate a
28 satisfactory explanation for its action including a 'rational connection between the facts

- 5 -

1   found and the choice made.'" Motor Vehicle Mfrs. Ass'n of U.S., 463 U.S. at 43
2   (quoting Burlington Truck Lines v. United States, 371 U.S. 156, 168 (1962)). A
3   reviewing court "must not rubber-stamp . . . administrative decisions that [the court
4   deems] inconsistent with a statutory mandate or that frustrate the congressional policy
5   underlying a statute." Ocean Advocates v. U.S. Army Corps of Eng'rs, 402 F.3d 846,
6   859 (9th Cir. 2005).

7   Summary judgment is appropriate only when the "pleadings, depositions, answers
8   to interrogatories, and admissions on file, together with the affidavits, if any, show that
9   there is no genuine issue as to any material fact and that the moving party is entitled to a
10  judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the initial
11  burden of establishing the absence of any genuine issue of material fact; the moving party
12  must present the basis for its summary judgment motion and identify those portions of the
13  record that it believes demonstrate the absence of a genuine issue of material fact.
14  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Devereaux v. Abbey, 263 F.3d 1070,
15  1076 (9th Cir. 2001).

16  In determining whether the moving party has met its burden, the Court views the
17  evidence in the light most favorable to the nonmovant. Allen v. City of Los Angeles, 66
18  F.3d 1052, 1056 (9th Cir. 1995). The Court may not make credibility determinations or
19  weigh conflicting evidence. Musick v. Burke, 913 F.2d 1390, 1394 (9th Cir. 1990). The
20  Court must draw all reasonable inferences in favor of the nonmovant. Gibson v. County
21  of Washoe, 290 F.3d 1175, 1180 (9th Cir. 2002). If the moving party meets its burden
22  with a properly supported motion for summary judgment, then the burden shifts to the
23  non-moving party to present specific facts that show there is a genuine issue for trial.
24  Fed.R.Civ.P. 56(e); Matsushia Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 587
25  (1986). The nonmovant may not rest on bare allegations or denials in his pleading, but
26  must set forth specific facts, by affidavit or as otherwise provided by Rule 56,
27  demonstrating a genuine issue for trial. Fed.R.Civ.P. 56(e); Anderson, 447 U.S. at 248-
28

49. Conclusory allegations, unsupported by factual material, are insufficient to defeat a motion for summary judgment. Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).

## IV.    DISCUSSION

Plaintiff contends that ONHIR's decision that Plaintiff was not a head of household by July 7, 1986 is arbitrary and capricious "in that it fails to consider the worth of Plaintiff's labor in caring for his livestock during 1985 and 1986" and is "contrary to ONHIR policy and caselaw which provide that artificial income levels are not necessarily determinative." (Dkt. #23-4, p.3). Also arbitrary and capricious, according to Plaintiff, is ONHIR's regulations "permit[ting] married individuals an exception for off-HPL employment without providing a similar exception to singles." (Dkt. #23-4, p.3). In other words, Plaintiff argues that ONHIR's failure to provide Plaintiff with an exception to the full-time residency requirement when one is single, but working away from the HPL, is arbitrary and capricious in light of the fact that ONHIR provides such an exception when one is married.

Defendant tersely responds that Plaintiff failed to meet his burden of proving that he met the requisite eligibility requirements because Plaintiff did not prove that he was a head of household by July 7, 1986, and Plaintiff had alternative residences off of the HPL after July 7, 1986. (Dkt. #27, p.2). In addition, Defendant states that "[t]he Hearing Officer thoroughly considered the testimony available and in his conclusion specifically addressed its credibility, and based upon that evidence presented reasonably concluded that Plaintiff did not qualify for benefits. (Dkt. #27, p.2).

//

//

### A. Relocation Assistance Benefits

Those applying for relocation benefits after July 7, 1986 must meet the following criteria for late applicants:

1. Currently own or occupy an identifiable residence on land partitioned to the [T]ribe of which they are not a member;
2. Be a continuous legal resident of an area partitioned to the [T]ribe of which they are not a member as of December 22, 1974 and at no other location; reside there physically full-time on July 7, 1986, and continuously thereafter until an eligibility determination is rendered;
3. Have no other place of residence;
4. Attain head of household status on or before July 7, 1986;
5. Be subject to eviction if benefits are not provided; and
6. Meet all other eligibility criteria set forth in 25 C.F.R. § 700.69, 700.97, 700.138, and 700.147.

ONHIR Management Manual ("MM") § 1270; 25 C.F.R. § 700.138 *et seq.* Further, in order to attain head of household status, a relocation applicant, if single, must have maintained and supported himself while residing on the partitioned land; the applicant must have obtained head of household status as of the time he moved off the partitioned land ord no later than July 7, 1986. 25 C.F.R. § 700.69. In order to be considered self-supporting, ONHIR policy requires that the applicant establish that he or she earned $1,300.00 per year in income. (Dkt. #23-4, p.6). However, ONHIR policy also recognizes that "[i]n some circumstances, individuals may be able to show that they are self-supporting without the benefit of tax returns and wage statements because of the lifestyle on the HPL. It is common for individuals to make a living from livestock or support themselves through odd jobs throughout the Reservation." (Id.). Relocation benefits do not extend to individuals who would otherwise qualify for benefits, but who are members of a household who has received benefits. 25 C.F.R. § 700.147(d), (e).

//

//

//

- 8 -

**B.     The Hearing Officer's Findings**

       i. Head of Household Status

The Hearing Officer found that while a student in Atwater, Plaintiff returned to the Big Mountain HPL only during summer vacations, major holiday recesses, and on long weekends where he had several days off of school. (DSOF 31(a)). In addition, the Hearing Officer also found that no receipts or other records existed to support or verify Plaintiff's testimony that his grandmother paid him $125.00 per month for labor between November 1985 and April 1986. (DSOF 31(b)). Further, based on the fact that Plaintiff attended high school full-time in Atwater, California from 1984-1987, 700 miles away from the Big Mountain HPL, the fact that Plaintiff also worked for the City of Merced, California from March to May 1986, and the fact that Plaintiff's grandmother subsisted solely on social security benefits, the Hearing Officer found that Plaintiff was not a credible witness regarding his alleged payment for the labor he performed during his visits to the Big Mountain HPL in 1985 and 1986. (DSOF 31(g)). In addition, because Plaintiff's uncle , Thomas Bedonie, was absent from the HPL for long periods of time due to his work with the railroad, the Hearing Officer found that Mr. Bedonie's recall of specific information regarding Plaintiff was lacking and thus his credibility was limited. (DSOF 31(h)). As such, the Hearing Officer found that Plaintiff had not attained head of household status as of July 7, 1986.

Plaintiff contends that the Hearing Officer's finding is arbitrary and capricious because the Hearing Officer ignored the testimony from Plaintiff's mother, Leta O'Daniel, that the payments her son received from his grandmother included the worth of the livestock for which Plaintiff cared. (Dkt. #23-4, p.5). Plaintiff argues that his alleged livestock should be considered "income in kind" and thus used to determine whether Plaintiff supported himself and had obtained head of household status. (Id.). However, Plaintiff concedes that "no testimony was received on the issue of the number of O'Daniel family animals sold and consumed during 1985 and 1986" or presumably the worth of Plaintiff's personal livestock. (Id.). Instead, Plaintiff merely contends that "it is

- 9 -

1 reasonable to conclude that some of [Plaintiff's] cattle and sheep would have been sold
2 and consumed during the year and would have added to his income." (Id.).

3       It is Plaintiff's burden to establish that he attained head of household status by July
4 7, 1986 pursuant to 25 C.F.R. § 700.69. Although ONHIR policy contemplates that an
5 individual living on the HPL may make a living from livestock, Plaintiff recognizes that
6 he did not submit testimony on the issue of whether any of his livestock was sold during
7 1985 and 1986, and thus the Hearing Officer did not inappropriately reject any testimony
8 to that effect. As such, the Hearing Officer's decision to question Plaintiff's
9 grandmother's ability to pay Plaintiff's $125 per month when she subsisted solely on
10 social security benefits was not inappropriate. Further, the Hearing Officer's decision to
11 find Plaintiff not credible with respect to his testimony regarding the work he performed
12 at the Big Mountain HPL was supported by the fact that while he was engaging in manual
13 labor on the HPL from November 1985 to April 1986, Plaintiff was also attending high
14 school 700 miles away and visited the HPL only on extended weekends, holidays, and
15 vacation. Plus, in addition to attending school full-time in California, Plaintiff had a job
16 there from March to May 1986.

17       Moreover, although Plaintiff's mother testified that Plaintiff also "worked for the
18 Hardrock Chapter House in addition to caring for his grandmother's cornfield and hauling
19 wood and coal," there is no evidence that Plaintiff was paid for his work at the Hardrock
20 Chapter House. Accordingly, the Court finds that the Hearing Officer's decision to find
21 Plaintiff not credible with respect to his testimony regarding the $125 per month that he
22 was paid by his grandmother was supported by substantial evidence. Further, because
23 Plaintiff did not submit evidence that his livestock was sold in 1985 and 1986, the Court
24 finds that the Hearing Officer's decision not to credit Plaintiff with unearned income from
25 livestock was not arbitrary and capricious. Cf. Manygoats v. Office of Navajo and Hopi
26 Indian Relocation Comm'n, 735 F.Supp. 949, 954 (D.Ariz. 1990) (finding decision to
27 deny benefits based on unsupported allegations was arbitrary and capricious).
28       ii. Legal Residence Status

- 10 -

1    The Hearing Officer found that even if Plaintiff had obtained head of household
2 status by July 7, 1986, his legal and physical residence was in Atwater, California,
3 because Plaintiff attended school there and lived there with his father since approximately
4 1982, and only returned to the Big Mountain HPL on extended weekends, holidays, and
5 during summer vacations. (DSOF ¶ 31(i), (k)). The Hearing Officer also found that even
6 if Plaintiff retained his legal residence at the Big Mountain HPL, Plaintiff's physical
7 residence had been in Atwater, California since Plaintiff was in the 7th grade. (DSOF ¶
8 31(j)). Moreover, the Hearing Officer found that Plaintiff did not physically reside full-
9 time on the HPL after July 7, 1986 and until his initial contact with ONHIR in 1995,
10 excluding his military service, because Plaintiff maintained physical residences in other
11 cities and states . (DSOF ¶ 31(l)).

12    As previously mentioned, to qualify for relocation assistance benefits, Plaintiff
13 must have (1) been a continuous legal resident of the Big Mountain HPL as of December
14 22, 1974, (2) resided there physically full-time on July 7, 1986, and continuously
15 thereafter until an eligibility determination was rendered by the ONHIR, and (3) had no
16 other place of residence. ONHIR MM § 1270. The standard for determining "legal
17 residence" is met by substantial and recurring contacts. ONHIR MM §§ 1270.2(3),
18 1215(3). In addition, Plaintiff points out that alternative physical residences can only
19 result in denials of late applicant relocation assistance benefits if they were occupied after
20 July 7, 1986. See id.; (Dkt. #30, pp. 6-7). Further, Plaintiff points out that the "full-time,
21 physical" residence requirement "permits off-HPL residency for attendance at education
22 institutions when individuals have been legal residents of the HPL on December 22,
23 1974; have continued that legal residency through July 6, 1986; were full-time on July 7,
24 1986; and thereafter leave for education but return to the HPL at its completion." (Dkt.
25 #23-4, p.8); ONHIR MM § 1270.6(1). Thus, Plaintiff contends that the education
26 exception applies to Plaintiff's residence in Atwater, California during his last year in
27 high school, from the end of summer 1986 through his graduation in June 1987. (Dkt.
28 #23-4, p.8). As Defendant does not directly respond or comment on this contention (or

- 11 -

1  any other for that matter), the Court will accept Plaintiff's argument and apply the
2  education exception to Plaintiff's senior year at Atwater High School.  As such, the
3  question becomes whether Plaintiff maintained substantial and recurring contacts with the
4  Big Mountain HPL between December 22, 1974 and July 7, 1986, and whether Plaintiff
5  physically and continuously resided on the HPL after Plaintiff returned to the HPL in the
6  summer of 1987 and until an eligibility determination was rendered.

7  The Hearing Officer found that Plaintiff's legal residence was in Atwater,
8  California because he resided there with his father while he was attending high school,
9  and his return visits to the Big Mountain HPL were "infrequent due to cost and distance."
10 (DSOF 31(i)).  Plaintiff, on the other hand, argues that labeling such return visits as
11 "infrequent" is improper.  This Court agrees.  Plaintiff testified that although he had been
12 attending high school in Atwater, he returned to the HPL whenever he could – summer
13 vacations, holiday recesses, and long weekends.  Plaintiff had relatives that remained on
14 the HPL, it appears that he maintained livestock on the HPL, and there is no indication
15 that the Hearing Officer discredited Plaintiff's testimony with respect to this matter.  The
16 test for legal residence is merely one of substantial and recurring contacts.  The record is
17 clear that although Plaintiff attended school in Atwater, he maintained substantial and
18 recurring contact with the Big Mountain HPL by returning to the HPL whenever possible.
19 The Court will not belabor this point; Defendant does little to nothing to respond to
20 Plaintiff's objection to the Hearing Officer's findings on this matter.  As such, the Court
21 finds that the Hearing Officer's failure to apply the "substantial and recurring contacts"
22 standard to determine legal residence, as well as his finding that Plaintiff's return visits to
23 the Big Mountain HPL were "infrequent," was arbitrary and capricious, and was not
24 supported by substantial evidence in the record.

25 Nevertheless, the Hearing Officer found in the alternative that Plaintiff failed to
26 establish his eligibility for relocation assistance benefits because he did not physically and
27 continuously reside on the Big Mountain HPL after Plaintiff returned to the HPL in the
28 summer of 1987 and until his contact with ONHIR on May 22, 1995.  Defendant

1   contends that the record clearly establishes that Plaintiff had alternative residences off of
2   the HPL during that time. (Dkt. #27, p.2). And indeed, Plaintiff does not appear to
3   dispute that contention; it is undisputed that Plaintiff maintained three alternative
4   residences between July 7, 1986 and May 22, 1995. (Dkt. #23-4, pp. 9-11). Instead,
5   Plaintiff contends that the Hearing Officer's failure to credit Plaintiff with the
6   employment exemption in ONHIR MM § 1270.6(4) was arbitrary and capricious.
7   Plaintiff, who was single during the relevant time period, recognizes that ONHIR MM §
8   1270.6(4) "provides relief for *married couples* whose immediate family (spouse and/or
9   children) remain behind on the HPL, while the employee goes to work." (Dkt. #23-4,
10  p.9) (emphasis added). However, Plaintiff argues that "[a]n exception that permits the
11  continuation of full-time residency for employees living close to their workplaces, yet
12  returning to the HPL on their days off should be consistently applied across the HPL
13  population"; "ONHIR's decision to provide an exemption for married couples whose
14  spouse and/or children remain behind, but not to singles whose parents and/or siblings
15  remain behind is arbitrary and capricious, and must be overturned." (Dkt. #23-4, pp. 9-
16  10).

17         This is a case brought pursuant to the APA, and as such, the Court's review is
18  quite limited. The Court may only determine whether the Hearing Officer's findings
19  were supported by substantial evidence; the APA does not give the Court the authority to
20  determine the validity of a particular agency regulation. As previously stated, an agency
21  action is arbitrary and capricious "if the agency has relied on factors which Congress has
22  not intended it to consider, entirely failed to consider an important aspect of the problem,
23  offered an explanation for its decision that runs counter to the evidence before the agency,
24  or is so implausible that it could not be ascribed to a difference in view or the product of
25  agency expertise." Motor Vehicle Mfrs. Ass'n of U.S., 463 U.S. at 43. In this case, the
26  Hearing Officer did not rely on factors that he was not intended to consider, he did not
27  fail to consider Plaintiff's testimony, and he did not offer an explanation for his decision
28  that ran counter to the evidence presented. Plaintiff does not contend that the Hearing

1  Officer's action was somehow inconsistent with ONHIR standards.  Instead, Plaintiff
2  attacks ONHIR standards; but under the APA, Plaintiff's objection to ONHIR's married-
3  only employment exemption represents a difference in view, not an attack on whether the
4  Hearing Officer considered the relevant factors before deciding that Plaintiff did not
5  reside full-time on the Big Mountain HPL prior to Plaintiff's contact with ONHIR.  There
6  is a rational connection between the Hearing Officer's findings and his decision, which is
7  supported by substantial evidence.  The Court's review stops there.  The Court finds that
8  the Hearing Officer's decision to deny Plaintiff's application for relocation assistance
9  benefits based on a finding that Plaintiff did not meet the full-time residency requirement
10 under ONHIR MM § 1270 was not arbitrary and capricious.

11 **Accordingly,**

12 **IT IS HEREBY ORDERED** that Plaintiff's motion for summary judgment (Dkt.
13 #23) is DENIED.

14 **IT IS FURTHER ORDERED** that Defendant's cross-motion for summary
15 judgment (Dkt. #27) is GRANTED.

16 **IT IS FURTHER ORDERED** directing the Clerk of the Court to enter judgment
17 accordingly.

18 DATED this 15th day of September, 2008.

Mary H. Murgula
United States District Judge